# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAUNYA M. THOMAS,**
        **Plaintiff,**

    v.                                                                    Case No. 10-C-0449

**WAUKESHA COUNTY,**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Taunya M. Thomas brings this employment-discrimination case against defendant Waukesha County (the "County"). She alleges that the County discriminated against her based on her race, Black, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983, when it did not higher her for the position of Economic Support Specialist. Before me now is the County's motion for summary judgment.

### I. BACKGROUND

In January 2006, the County's Department of Health and Human Services solicited applications for an Economic Support Specialist, a position that involved working with families with minor children to determine whether they were eligible for certain forms of public assistance—known as "FoodShare," "Medical Assistance," and "ChildCare." On January 9, 2006, Thomas applied for the position. As part of her application, she completed an affirmative-action form and disclosed that she was Black.

The County received 132 applications for the position. Once the applications were received, Debbie Rapp, a human-resources assistant for the County, reviewed the applications and identified the candidates who met the position's minimum training and experience requirements. Rapp determined that Thomas and eighty-six other candidates

met the requirements. After Rapp identified those eighty-seven candidates, their applications were forwarded to Luann Page, an Economic Support Supervisor in the Department of Health and Human Services, who was in charge of hiring the new Economic Support Specialist. By the time the applications reached Page, the affirmative-action forms had been removed.

Once Page received the applications, she divided the candidates into four groups based on their work experience. She described the groups as follows:

> Group 1 consisted of applicants who had recent work experience (lasting 1-2 years in the 2 years prior to application) in determining eligibility for Food Share, Medical Assistance and Child Care.
>
> Group 2 consisted of applicants who had experience in the W2 program, Child Support and Child Care.
>
> Group 3 consisted of applicants who had recent experience working with clients in a county agency or community social setting.
>
> Group 4 consistent of applicants who had experience in interpreting program policy or working with the public in the role of public relations or similar experience.

(Page Aff. ¶¶ 8–11, ECF No. 34.) Page placed seven candidates in Group 1. However, three of those seven candidates were internal Waukesha County employees who were given interviews pursuant to the County's policy of interviewing all existing County employees who applied for a new position. Thus, only four of the candidates placed in Group 1 were placed in that group because they had the most relevant work experience. Page placed six candidates in Group 2, forty-four candidates in Group 3, and thirty candidates in Group 4. Page placed Thomas in Group 4. Although Page created this

grouping system and decided which candidates belonged in which groups, she consulted with Sue Schmitz, the Economic Support Coordinator, during the process.

Page's plan was to interview the candidates in Group 1 and hire someone from that group, if possible. If no one from Group 1 was hired, then Page would have interviewed the candidates in Group 2. If no one from Group 2 was hired, then Page would have interviewed candidates from Group 3 and, if necessary, Group 4.

The County interviewed all seven of the candidates in Group 1. The interviews were conducted primarily by Page, although another Economic Support Supervisor, Patricia McElroy-Komppa, participated in some of the interviews. One of the seven candidates who received an interview, Alicia Wilder, was Black. The candidate who was eventually hired for the position, Julie Vetter, was white. According to the County, Vetter was hired because she had approximately seven years of experience at a human-services agency in California, where she dealt with medical-assistance programs and food-stamp programs that were similar to the kinds of programs that the Economic Support Specialist would be dealing with. Because the County filled the position with a Group 1 candidate, it did not interview any of the candidates in the other groups. Thus, Thomas did not receive an interview and was not hired.

After the County hired Vetter, one of the rejected candidates, Bernadine Matthews, who is Black, filed a timely charge of discrimination with the EEOC. Matthews alleged that the County discriminated against her on the basis of race and age. The EEOC issued a determination stating that there was "reasonable cause to believe that there is a violation of Title VII in that [the County] discriminated against a class of Black applicants, including [Matthews], when they were excluded from consideration for the Economic Support

Specialist position and thus, denied hire." (Thomas Decl. Ex. S, ECF No. 52-20.) The EEOC invited the County to participate in its conciliation process. That process was unsuccessful, and the EEOC referred the case to the U.S. Department of Justice. The Department of Justice declined to file suit against the County, and on February 23, 2010, it issued a notice of right to sue to Matthews. Matthews filed a civil action against the County on May 21, 2010. That action is currently pending before another judge in this district.

At some point in 2007, Thomas had a discussion with Matthews and decided to bring her own discrimination claim against the County. However, Thomas did not file a charge of discrimination with the EEOC. Nevertheless, within ninety days after the Department of Justice issued its notice of right to sue to Matthews, Thomas commenced the present action.

## II. DISCUSSION

Thomas brings a disparate-treatment claim against the County, alleging that it did not hire her for the Economic Support Specialist position because of her race. The County moves for summary judgment on two grounds. First, it argues that Thomas has not exhausted her administrative remedies. Second, it argues that Thomas cannot make out a disparate-treatment claim under either the direct or indirect method of proof.

**A.     Exhaustion**

Before a plaintiff may bring an employment-discrimination lawsuit under Title VII in Wisconsin, he or she must exhaust administrative remedies by filing a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. See 42

4

U.S.C. § 2000e-5(e)(1). In the present case, it is undisputed that Thomas did not file such a charge. However, Thomas contends that this case should not be dismissed for failure to exhaust administrative remedies because, under the "single-filing" rule, she may "piggyback" on the charge filed by Bernadine Matthews.

The single-filing rule generally provides that a plaintiff who did not file a charge of discrimination with the EEOC may either join a class action or intervene in a lawsuit brought by someone else who did file a timely charge with the EEOC that arises out of the same or similar allegedly discriminatory conduct. See Horton v. Jackson County Bd. of County Comm'rs, 343 F.3d 897, 899 (7th Cir. 2003). In the present case, Matthews filed a timely charge with the EEOC that arises out of the same allegedly discriminatory conduct as Thomas's claim—namely, race discrimination in the hiring of the Economic Support Specialist in January 2006. However, Thomas is not seeking to join a class action brought by Matthews or to intervene in Matthews's pending lawsuit, and some courts have held that the single-filing rule does not apply when the plaintiff brings a separate lawsuit. See, e.g., Price v. Choctaw Glove & Safety Co., Inc., 459 F.3d 595, 598–99 (5th Cir. 2006); Bettcher v. The Brown Schools, Inc., 262 F.3d 492, 494–95 (5th Cir. 2001). The Seventh Circuit has not explicitly considered whether a plaintiff using the single-filing rule may file her own lawsuit, although one of its decisions, which does not mention the single-filing rule, could be construed to mean that she can. See Eichman v. Ind. State Univ. Bd. of Trs., 597 F.2d 1104, 1107–08 (7th Cir. 1979). However, I need not determine whether a plaintiff may use the single-filing rule to excuse nonexhaustion in a separate lawsuit because, as explained in the next section, Thomas's claim fails on the merits.

**B.    Evidence of Discrimination**

Thomas attempts to overcome the County's motion for summary judgment on her disparate-treatment claim by using both the direct and indirect methods of proof. However, under either method, Thomas's claim fails because she has no evidence that the person who decided to not hire her knew that she was Black. See Robinson v. Adams, 847 F.2d 1315, 1316–17 (9th Cir. 1987) ("An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race."); accord Raytheon Co. v. Hernandez, 540 U.S. 44, 55 n.7 (2003) (disability discrimination); Clay v. Holy Cross Hospital, 253 F.3d 1000, 1007 n.7 (7th Cir. 2001) (pregnancy discrimination); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 81–83 (2d Cir. 2005) (age discrimination); cf. Pressley v. Haeger, 977 F.2d 295, 297 (7th Cir. 1992) (observing that defendant could not discriminate against plaintiff on account of race if defendant did not know plaintiff's race). Although Thomas completed the County's affirmative-action form and disclosed that she was Black, that form was removed from her application before it reached Page and the other employees in the County's Department of Health and Human Services who participated in the ultimate hiring decision. See Rapp Aff. ¶ 7, ECF No. 33; Page Aff. ¶ 12, ECF No. 34.[1]  Thus, when Page and other employees in the Department created the four

---

[1] In her response to the County's proposed findings of fact, Thomas denies that the affirmative-action form was removed from her application before being sent to the Department of Health and Human Services. See ECF No. 54 ¶ 9. However, Thomas does not cite any evidence that contradicts the affidavits of Rapp and Page, which state that the forms were removed before they reached the Department of Health and Human Services. The evidence Thomas does cite is an excerpt from Debbie Rapp's deposition, which was taken in Bernadine Matthew's case, in which Rapp testifies that the candidates' affirmative-action forms were still attached to their applications when Rapp put the applications in her "out basket." See Thomas Decl. Ex. J at 20, ECF No. 52-11. However, the applications went from Rapp's out basket to the "front desk" rather than directly to the Department of

groups and put Thomas in Group 4, they did not know that she was Black.[2]  Thus, race could not have played a role in the decision to place Thomas in Group 4.  Since it was the placement of Thomas in Group 4—behind fifty-seven other candidates—that caused the County to not hire her, the County's decision to not hire her could not have been based on race.

Thomas points out that Debbie Rapp might have seen Thomas's affirmative-action form, since it was still attached to her application when Rapp conducted her initial review of the applications to screen out the candidates who did not have the minimum qualifications for the position.  However, Rapp determined that Thomas had the minimum qualifications for the position, and thus even if Rapp looked at Thomas's form and learned that she was Black, her knowledge could not have been a causal factor in the County's failure to hire Thomas.

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the County's motion for summary judgment is **GRANTED**.  The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 16th day of June 2012.

                                          s/ Lynn Adelman
                                          LYNN ADELMAN
                                          District Judge

---

Health and Human Services.  Id. at 11.  The front desk copied the applications and sent the copies to the Department of Health and Human Services.  Id.  The affirmative-action forms were removed from the applications prior to copying.  Rapp Aff. ¶ 7, ECF No. 33.

[2]Thomas does not contend that anything in the part of her application that the Department of Health and Human Services received indicated that she was or might have been Black.  Cf. EEOC v. Target Corp., 460 F.3d 946, 960–61 (7th Cir. 2006) (concluding that whether decisionmakers knew plaintiffs were African-American was triable issue of fact because plaintiffs' resumes contained information indicating that they were African-American, such as membership in African-American sorority).